IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JULIO A. TORO-McCOWN; LAYLANIE RUIZ-OLMO<br><br>Plaintiffs<br><br>vs<br><br>JAVIER QUINTANA-MENDEZ, in his personal and official capacities as Executive Director fo the Solid Waste Authority of Puerto Rico; THE SOLID WASTE AUTHORITY OF PUERTO RICO; LUIS MIGUEL CRUZ, in his personal and official capacities as Administrator of the Environmental Agencies Building; ABC INSURANCE CO.; JOHN DOE, RICHARD DOE<br><br>Defendants | CIVIL 09-1193CCC |

## OPINION AND ORDER

**I. Procedural Background**

The plaintiffs in this case, Julio A. Toro-McCown and Laylanie Ruiz-Olmo, filed earlier consolidated lawsuits[1] in 2008 against the same defendants now sued, seeking damages, declaratory judgment and injunctive relief for violations of their rights under 42 U.S.C. §1983. They re-filed their §1983 claims in this 2009 litigation after the judgments were entered on December 24, 2008.[2] The Court must determine whether the res judicata defense, as argued by the three defendants, Javier Quintana-Méndez as Executive Director of the Solid Waste Authority of Puerto Rico (SWA), the SWA and Luis M. Cruz as Administrator of the "Environmental Agencies Building (worksite), in their Rule 12(b)(6) Motion to Dismiss (**docket entry 7**) is applicable, or whether

---

[1] Toro–Civil 08-1058; Ruiz--Civil 08-1638.

[2] Although Toro brought additional claims under the ADA and Rehabilitation Act in his 2008 complaint, Civil 08-1058, these are irrelevant to the res judicata analysis since only the earlier §1983 claims are included in this suit

CIVIL 09-1193CCC                                             2

plaintiffs' purported "newly discovered evidence" creates new claims not raised in their previous lawsuits, as they argue in their opposition (docket entry 9).

    The 2008 consolidated, consented-to cases were dismissed by U.S. Magistrate Judge Arenas based on the reasons stated in the principal Opinion and Order issued in Toro's case, Civil 08-1058 (Toro I), the relevant portions of which, addressing §1983, the Fourteenth Amendment and state tort law were incorporated into the Opinion and Order issued in Ruiz' action, Civil 08-1638. (Ruiz I).  Magistrate Judge Arenas makes a sufficiency-of-the-pleadings analysis of Toro's §1983 allegations, and concludes that both Toro and Ruiz' complaints failed to state a claim for relief.  Specifically addressing the equal protection clause of the Fourteenth Amendment, the Court notes that Toro failed to allege that he was treated differently from similarly situated employees who suffered symptoms similar to his. Regarding the substantive due process claim, the Court likewise concluded that Toro did not allege that he was deprived of his liberty or any constitutionally recognized property interest at any time.  Therefore, his substantive due process claim was found to be insufficient since conduct that shocks the conscience must refer to the transgression of fundamental principles and the complaint merely raised physical and emotional injuries as a result of working in a building allegedly contaminated by fiberglass.  These same deficiencies were found to be present in Ruiz' prior complaint.  The Court concluded that the actions alleged to have been taken by the SWA were not "conscience shocking" nor violations of Ruiz' fundamental rights.

    The relevant excerpts of Magistrate Judge Arenas' Opinion and Order in Toro I, on the substantive component of the Due Process Clause of the Fourteenth Amendment, which he made applicable to Ruiz I, states:

> The United States Supreme Court has held that the breaching of a duty of care owed to a plaintiff by failure to provide a safe work environment " is analogous to a fairly typical state-law tort claim" and not sufficient to constitute a violation of substantive due process rights. Collins v. City of Harker Heights,503 U.S. 115, 128 (1992) (no due process violation where sanitation worker suffered death by asphyxiation from

CIVIL 09-1193CCC                                              3

> sewer gas while working in a manhole)(see also Ramos-Pinero v. Puerto Rico, 453 F.3d, at 54 (no due process violation for death of a fourteen-year-old boy when governmental entities failed to cover open manhole).
>
> Here, Toro alleges "defendants' violations of plaintiff's constitutional rights were intentional, willful and wanton." (Docket No.1, at 10, ¶31.) The most egregious factual allegation he musters, however, is that the SWA admitted workers into its building despite the fact that it may have had reason to know that conditions had deteriorated in its air condition system. Such facts do not rise to the level of shocking the conscience, but rather closely analogous to those of Collins in that they involve the physical injury of a public employee potentially caused by the negligence of a government entity. There was no violation of substantive due process in Collins, and there was not one here. Toro's section 1983 is therefore dismissed.

**II. Comparison of Toro I and Ruiz I with Toro/Ruiz II**

The December 24, 2008 judgments based on Magistrate Judge Arenas' findings of failure to state a claim under §1983 were not appealed by either Toro or Ruiz. They chose, instead, to file a new lawsuit, the case at bar–Civil 09-1193CCC–on February 27, 2009, two months thereafter. The allegations of the earlier complaints and the present one are practically carbon copies. The factual allegations of the three complaints are all related to hazardous environmental conditions in the building to which plaintiffs were assigned to work, Toro in April, 2005 and Ruiz in February, 2006, located in the El Cinco sector of Río Piedras, Puerto Rico, known as the "Environmental Agencies Building" (the Building) of the Department of Natural and Environmental Resources (DNR) which resulted in both plaintiffs developing pulmonary fibrosis due to the presence of fiberglass in the air conditioning system. All three complaints also aver that in the year 2007, due to the contamination of the Building, Toro and Ruiz had to be hospitalized and the tests performed revealed that their" lungs [were] full of fiberglass splinters that act like small daggers against the lining of [their lungs.]" See ¶21 of the 2009 complaint, and ¶¶18 and 22 of Ruiz and Toro's 2008 complaints, respectively.

CIVIL 09-1193CCC                                              4

The allegations of fact as to all causes of action averred in the three complaints are essentially the same, using the same wordings. The following table reflects the correspondence and identicality of the §1983 allegations in the three cases, Civil 09-1193 (J),[3] Civil 08–1058 (T), and Civil 08-1638 (R).

| Civil 09-1193(J) | Civil 08-1058(T) | Civil 08-1638(R) |
| --- | --- | --- |
| ¶17 | ¶18 | ¶15 |
| ¶18 | ¶20[4] | ¶16 |
| ¶19 | ¶21 | ¶17 |
| ¶20 | ¶21-last sentence | ¶17- last sentence |

The difference between ¶20(J) and the last sentences of ¶21(T) and ¶17(R) is that the phrases "with fiberglass dust coming out of the air conditioning unit" and "this is shocking to the conscience" were added in the reworded allegation.

| ¶21 | ¶22 | |
| --- | --- | --- |

¶21(J) which corresponds to ¶22(T) refers to Toro's pneumonia and his receiving medical treatment on February 17, 2007 at the Metropolitan Hospital and that

> [d]uring his prolonged stay the tests performed by the physicians at the hospital, [Toro] discovered that his lungs are full of fiberglass splinters that act as small daggers against the lining of his lungs" and that "he was eventually diagnosed as having pulmonary fibrosis.

These 2008 and 2009 allegations are exactly worded. Both refer to plaintiff Toro discovering since the February 17, 2007 hospitalization that his lungs were filled with **fiberglass** splinters.

---

[3](J) for the joint complaint; (T) for Toro's first complaint; and (R) for Ruiz' first complaint.

[4]Paragraph 19 merely lists his duties.

CIVIL 09-1193CCC                               5

| Civil 09-1193(J) | Civil 08-1058(T) | Civil 08-1638(R) |
|---|---|---|
| ¶22 | ¶¶23&24 | ¶¶19 & 24[5] |
| ¶23[6] | ¶25 | |
| ¶24[7] | ¶30 | |
| ¶25 | ¶31 | ¶28 |
| ¶26 | | ¶18 |

Paragraph 26(J) and ¶18(R) refer to Ruiz' pneumonia. These 2008 and 2009 paragraphs use exactly the same wording to refer to her hospitalization from February 24, 2007 through March 17, 2007.  As with Toro's corresponding allegations, ¶26(J) and ¶18(R) read:

> During her prolonged stay, the tests performed by the physicians at the hospital established and **plaintiff discovered that her lungs are full of fiberglass splinters that act like small daggers against the lining of her lungs**. She was eventually diagnosed as having pulmonary fibrosis by Dr. Cintrón Rivera.

Paragraph 27(J) of the 2009 complaint is a new allegation that does not have an exactly worded counterpart in the previous complaints.  What it adds is that defendants "fraudulently concealed" the fact that the deteriorated conditions of the air conditioning system in the Building were inadequate for continued  exposure to the staff.  However, allegations ¶21(T) and ¶17(R) specifically aver that defendants were aware of the fact that the "building was contaminated before plaintiffs [were] reassigned to work out of the very building.  Co-defendants were aware of this fact, didn't inform their employees and willfully put them to work in this environment, risking their life."

---

[5] Ruiz' 2008 complaint's numbering jumps from ¶19 to ¶24.

[6] Refers only to Toro's November 1, 2007 evaluation.

[7] Refers only to Toro's pulmonary condition as irreparable.

CIVIL 09-1193CCC                                        6

| Civil 09-1193(J) | Civil 08-1058(T) | Civil 08-1638(R) |
|---|---|---|
| ¶28 | | ¶24 |
| ¶29 | | ¶25 |
| ¶30 | | ¶26 |

The sentence, "This is shocking to the conscience" was added to ¶30(J). It is not in the parallel paragraph of Ruiz' first complaint, ¶26(R).

| ¶31 | | ¶27 |
|---|---|---|
| ¶32 | | ¶28 |

The phrase, "and shocking to the conscience" was added to ¶32(J). It is not in the parallel paragraph of Ruiz' first complaint, ¶28(R).

**III. Judicata Defense/ Rule 12(b)(6) Dismissal**

Plaintiffs' two previous 2008 complaints having been dismissed for failure to state a claim, such dismissals are final judgments on the merits, and thus have res judicata effects. Federated Department Stores, Inc. v. Moitie, 101 S.Ct. 2424, 2428 n.3 (1981); Angel v. Bullington, 67 S.Ct. 657, 661 (1946) ("The 'merits' of a claim are disposed of when they are refused enforcement." "Dismissal for failure to state a claim under Rule 12(b)(6) is a final judgment on the merits"); Berrios v. New York City Housing Authority, 564 F.3d. 130, 134 (2nd Cir. 2009); Northeast Erectors Assoc. of the BTA v. Sec. of Labor et. al., 62 F.3d. 37, 39 (1st Cir. 1995).

The dismissal on the basis of an affirmative defense such as res judicata can only occur when two conditions are met:

> The first condition is that the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice. The second condition is that the facts so gleaned must conclusively establish the affirmative defense.

Id. (Citations omitted.)

CIVIL 09-1193CCC                              7

With regard to the application of the doctrines of res judicata as to claim preclusion and collateral estoppel as to issue preclusion, the United States Supreme Court has stated:

> Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

Allen v. McCurry, 449 U.S. 90, 93 (1980) (Citations omitted). The Court has additionally recognized that the application of res judicata and collateral estoppel relieves parties of the costs and vexation of multiple lawsuits and, by preventing inconsistent decisions, encourages reliance on adjudication. Id .

> We have stressed that "the doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts . . . Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299 (1917).

Federated Department Stores, supra, at 2429.

> The predicament in which respondent finds himself is of his own making . . . [W]e cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata*, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation–a maxim which comports with common sense as well as public policy.

Id.

**IV. Applicability of Res Judicata to This Case**

Toro I and Ruiz I are res judicata to Toro/Ruiz II. Confronted with the final adjudication of their §1983 claims, plaintiffs chose not to appeal nor to file a Rule 60(b)(2) motion based on newly discovered evidence. Although all of the elements of a res judicata defense were present within two months after judgments were entered by Magistrate Judge Arenas, plaintiffs brought another action, based on the same nucleus of facts, against the

CIVIL 09-1193CCC                               8

same parties in an obvious attempt to relitigate their claims. As shown in the previous discussion, all of the allegations in the 2009 Toro/Ruiz II complaint are replicas of the factual allegations in the consolidated complaints–Toro I and Ruiz I. Plaintiffs have attempted to recast their claim as a new action by: (1) adding the phrase "shocking to the conscience" to actions attributed to defendants, (2) adding the phrase "fraudulently concealed" to their previous allegations that defendants "were aware of this fact [referring to the Building being contaminated], didn't inform their employees and willfully put them to work in this environment," Paragraph 21, Toro I and ¶17 Ruiz,[8] and (3) by adding the word "dust" after fiberglass. Fiberglass is the pollutant which Toro and Ruiz have claimed throughout their three complaints to have been present as "fiberglass splinters that acted like small daggers against the lining of [their] lungs."[9]

The operative word describing the pollutant is "fiberglass." Whether in the form of dust, particles, or both, it is a distinction without a difference, in that it does not convert their old claim into a new cause of action. What plaintiffs have always claimed since 2008 is that they developed respiratory symptoms, became ill, and were diagnosed with pulmonary fibrosis because the Building's air conditioning system was contaminated with fiberglass which they inhaled, thereby damaging their lungs and reducing their pulmonary capacity.

Their "newly discovered evidence" argument is defeated by the fact that all of the complaints rely on the same 2007 OSHA reports. The reference to the 2007 OSHA findings in their previous complaints, made after inspections of the building, are found in ¶¶39 and 47 of the Ruiz I and Toro I complaints, respectively. These allegations report the finding in the following manner:

---

[8] Paragraph 17 of Ruiz I actually reads, "Codefendants were aware of this fact, didn't inform their employees and willfully put them to work in this environment risking their life."

[9] Paragraph 18, Ruiz I; ¶22, Toro I and ¶¶ 21 and 26 in Toro/Ruiz II, respectively.

CIVIL 09-1193CCC                                    9

> Among the findings were: a) The return and diffusion grilles of the air conditioning system were dirty with visible dust accumulation; b) Fiber glass pieces were found stuck in the grids of the diffusion air grille.

The same OSHA findings are reported in Toro/Ruiz II at ¶43 as follows:

> Among the findings were: a) The return and diffusion grilles of the air conditioning system were dirty with visible fiberglass dust accumulation. b) Fiberglass pieces were found stuck in the grids of the diffusion air grille.

Although the OSHA 2007 findings were known to them since the filing of their first lawsuits, in the 2009 allegation they changed the wording of the first finding by adding "fiberglass" to the phrase, "visible dust accumulation." This rewording by plaintiffs does not make the OSHA finding "newly discovered evidence" nor does it artificially create a new cause of action.

At page 4 of their opposition to the dismissal, plaintiffs contend that the allegation in ¶38 of the complaint now before us that their lung capacities were reduced to 50%, which "is shocking to the conscience," is new evidence. We initially note that although Toro I does not express the degree to which his lung capacity was compromised, Ruiz, at ¶34 of her first complaint, states that she has "a permanent [lung] incapacity of 60%." That is, as pleaded Toro/Ruiz II, her lung capacity has actually improved by 10% over the capacity claimed in Ruiz I. This purportedly "new evidence" does not advance plaintiffs's argument that the Court revisit the matter.

The Court of Appeals for the Eleventh Circuit, in discussing the accrual of a cause of action in <u>Federal Savings and Loan Insurance Corporation v. Haralson</u>, 813 F.2d 370 (11th Cir. 1987) stated:

> If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; <u>for in such a case the subsequent increase in the damages resulting gives no</u>

new cause of action.

Id., at 377. (Citations omitted, emphasis ours.) See, also, Englehardt v. Bell & Howell Co., 327 F.2d 30 (8th Cir. 1964) (Variance in the amount of damages claimed is insufficient to establish that the present cause of action is different from that pleaded in the prior action.)

For the above-stated reasons, the Court finds that the information advanced by plaintiffs as "newly discovered evidence" is neither new nor of a type that would support a new and different claim that would overcome the effects of the "res judicata" defense based on the Judgments in Toro I and Ruiz I.

This Opinion and Order constitutes the Statement of Reason in support of the September 30, 2009 Judgment.

SO ORDERED.

At San Juan, Puerto Rico, on October 8, 2009.

S/CARMEN CONSUELO CEREZO
United States District Judge